**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| RIVER VALLEY INGREDIENTS, LLC, et al., | ) ) ) |
| Plaintiff/Counter-Defendants, | ) ) |
| v. | ) C.A. No. N19C-12-160 PRW ) CCLD |
| AMERICAN PROTEINS, INC., et al., | ) ) |
| Defendants/Counter-Plaintiffs. | ) |

Submitted: August 12, 2025
Decided: November 5, 2025

*Upon Defendants' Rule 59 Motion for Reargument or, in the Alternative, to Alter or Amend the Judgment,*
**GRANTED in part, DENIED in part.**

## ORDER

In July 2025, the Court issued its Decision After Trial, in which it found in favor of Plaintiff Tyson on its fraudulent inducement claim and certain aspects of its breach-of-contract claim.[1] The award to Tyson was $55 million without including interest.[2] After the Court issued this decision, Defendant API filed a Rule 59 motion for reargument or, in the alternative, to alter or amend the judgment.[3]

---

[1] *River Valley Ingredients, LLC v. Am. Proteins, Inc.*, 2025 WL 1826656 (Del. Super. Ct. July 2, 2025) (hereinafter "*Decision After Trial*").

[2] *Id.* at *21.

[3] API's Rule 59 Mot. (D.I. 691).

In its motion, API argues it is due Rule 59 relief because of nine separate errors it believes the Court made.[4] In API's view, the Court:

(1) "Err[ed] in Using $871 Million as the Represented Value for Damages;"[5]

(2) "Err[ed] Regarding Application of the Deductible;"[6]

(3) "Err[ed] in Applying Tyson's 'Low Scenario' Damages"[7]

(4) "Err[ed] Regarding Mitigation;"[8]

(5) "Err[ed] in Awarding Compound Pre- and Post-Judgment Interest;"[9]

(6) "Err[ed] Regarding Timing and Purpose of the Process Change;"[10]

(7) Made a "Typographical Error Regarding Sample Reliance;"[11]

(8) "Err[ed] in Finding *Sipsey* was not Reimbursable;"[12] and,

(9) "Err[ed] in Finding Breach of Art. 4.21(b) without Evidence of Damages"[13]

Tyson disagrees with all the above, except for the typographical error (Number

---

[4]  *Id.* at 2-13.

[5]  *Id.* at 2-3.

[6]  *Id.* at 4.

[7]  *Id.* at 5-6.

[8]  *Id.* at 6-8.

[9]  *Id.* at 8.

[10]  *Id.* at 8-9.

[11]  *Id.* at 9.

[12]  *Id.* at 9-10.

[13]  *Id.* at 11-12.

Seven).[14]

For the reasons explained below, API's motion is **GRANTED in part, DENIED in part**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since the extensive factual and procedural history of this case is set forth in the re-issued Decision After Trial, it won't be recounted here. As to the current motion, the Court heard argument on the pre- and post-judgment interest claim (Number Five) and informed the parties that it would decide the rest of the Rule 59 issues on the briefing.[15]

## II. STANDARD OF REVIEW

"Under Rule 59, 'a motion to alter or amend [a] judgment . . . will be granted if the movant shows: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or to prevent manifest injustice.'"[16]

"A motion for reargument pursuant to Superior Court Civil Rule 59(e) will be granted only if 'the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the

---

[14] Tyson's Rule 59 Resp. at 1-10 (D.I. 693).

[15] D.I. 696.

[16] *Monzo v. Nationwide Prop. & Cas. Ins. Co.*, 249 A.3d 106, 117 (Del. 2021) (citing *King v. McKenna*, 2015 WL 5168481, at *3 (Del. Super. Ct. Aug. 24, 2015) (citation omitted)).

outcome of the underlying decision.'"[17] "A motion for reargument is not an opportunity for a party to rehash arguments already decided by the Court or to present new arguments not previously raised."[18]

## III. DISCUSSION

### A. RULE 59 RELIEF IS DUE ON THE INTEREST AND TYPOGRAPHICAL ISSUES.

#### 1. API's motion to amend the judgment is GRANTED regarding the award of pre- and post-judgment interest.

After holding limited post-trial oral argument solely on the judgement interest issue, the Court finds that compounding interest isn't warranted in this situation. The Decision After Trial which has been revised and is reissued herewith further explains the Court's reasoning.

#### 2. API's motion is GRANTED regarding the typographical error regarding sample reliance.

As all agree there was a typographical error transposing the parties in one sentence, that has been corrected in the Reissued Decision After Trial.

### B. NONE OF API'S OTHER ISSUES WARRANT RULE 59 RELIEF.

Most of API's other current arguments have merely been resurrected from its post-trial briefing. None demonstrate proper grounds to grant it Rule 59 relief.

---

[17] *Strong v. Wells Fargo Bank*, 2013 WL 1228028, at *1 (Del. Super. Ct. Jan. 3, 2013) (quoting *Kennedy v. Invacare, Inc.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006)).

[18] *Id.*

**1. API's motion is DENIED regarding the Court's use of $871 million as the represented value for damages.**

In API's motion for reargument, it suggests that the Court mistakenly relied on the $871 million value when it should have used the purchase price as the transaction's represented value.[19] But API's framing isn't accurate. The Court took issue with the reliability of any estimates due to API's fraud. It found that "a reliably accurate valuation of API at the time of sale could be as low as $785.7 million, compared to the original estimate of $871 million. As such, a truer valuation of API might be found to be approximately $80 million lower than the purchase price."[20] Due to the unreliability noted (and other factors), the Court based its damages amount on the $55 million indemnification cap instead.[21]

At bottom, the Court misapplied neither the law nor the facts.[22] API simply doesn't agree with the Court's approach to addressing damages, which is no basis Rule relief now.[23]

---

[19]  API's Rule 59 Mot. at 4.

[20]  *Decision After Trial*, 2025 WL 1826656, at *20.

[21]  *Id.* ("But, the Court finds that the higher estimate of such damages—whether the result of fraudulent inducement or breach of contract, which in this instance are truly inseparable—would be excessive and trigger the indemnification cap of $55 million.").

[22]  Even if the Court solely relied on Tyson's valuation instead of the purchase price (which it didn't), it wouldn't be a misapplication of the law. *See NetApp, Inc. v. Cinelli*, 2023 WL 4925910, at *18 (Del. Ch. Aug. 2, 2023), judgment entered, (Del. Ch. 2023) (stating that "Delaware courts routinely use the purchase price as the starting point for benefit-of-the-bargain damages calculations," not that it's the sole method).

[23]  *See Blevins v. Metzgar*, 2017 WL 2709748, at *1 (Del. Super. Ct. June 22, 2017) ("motions for reargument should not be used merely to rehash the arguments already decided by the court")

**2. API's motion is DENIED regarding the Court's application of the deductible.**

In API's motion for reargument, it suggests that the Court erred in applying the deductible.[24] API, in its post-trial briefing, argued that Tyson's damages fell below the $4.125 million deductible and treated it as a condition precedent to recovery.[25] In its Decision After Trial, the Court specifically addressed the applicability of the escrow deductible and disagreed with API's conclusions.[26]

In addition, the Court will not subtract the deductible from its awarded $55 million in damages. The Court found the appropriate damages to match the $55 million escrow cap even after considering API's deductible claims. The damages will remain as such.

Upon review, the Court does not find any error in its original analysis, and it does not see the need to revisit failed arguments already rejected by the Court.[27]

**3. API's motion is DENIED regarding the Court's application of Tyson's "low scenario" damages.**

In its motion, API suggests that the Court erred by beginning its analysis with

---

(citation omitted).

[24] API's Rule 59 Mot. at 2-3.

[25] API's Post-Trial Reply Br. at 36-37 (D.I. 682); API's Post-Trial Opening Br. at 18-20 (D.I. 678).

[26] *Decision After Trial*, 2025 WL 1826656, at *10.

[27] *See Strong*, 2013 WL 1228028, at *1 ("A motion for reargument is not an opportunity for a party to rehash arguments already decided by the Court or to present new arguments not previously raised").

Tyson's lower damages scenario.[28] Once again, the Court is not required to now alter its findings merely because API doesn't agree with the Court's approach.[29]

API is misguided in its belief that "[t]he Court's finding that the Hanceville data was unreliable *would necessitate* using [API's expert's] model. . . ."[30] The Court notes that it was "accounting for API's own record-keeping gaps,"[31] which means that it found none of the expert testimony to be convincingly credible for the Hanceville plant. The Court, as factfinder, has the option to disagree with one, the other, or both experts.[32] Too, when the Court is presented with varying expert opinions, it is free to accept or reject the testimony of one, the other, or both experts, either in whole or in part.

Due to the lack of reliability found in both parties' proffers, the Court reviewed Tyson's lower damages scenario and found it fitting to set the damages amount at $55 million (the indemnification cap).

---

[28] API's Rule 59 Mot. at 5-6.

[29] *See King*, 2015 WL 5168481, at *3 (explain that "the Court will deny the motion if it merely restates arguments already considered and rejected during the litigation" (quoting *Paron Capital Mgmt. v. Crombie*, 2012 WL 3206410, at *1 (Del. Ch. Aug. 2, 2012))).

[30] *See* API's Rule 59 Mot. at 5 (emphasis added).

[31] *Decision After Trial*, 2025 WL 1826656, at *19.

[32] *See Gonslaves v. Straight Arrow Publishers, Inc.*, 701 A.2d 357, 361 (Del. 1997) ("The testimony of a thoroughly discredited witness, expert or lay, is subject to rejection under the usual standards which govern receipt of such evidence.")

**4. API's motion is DENIED regarding the Court's mitigation findings.**

In API's Rule 59 motion, it suggests that the Court erred when it found a demonstration of mitigation wasn't necessary.[33] The Court specifically addressed API's mitigation argument and concluded that it "fails to see what mitigation efforts were even available to Tyson."[34]

API offers neither further facts nor much reasoning on mitigation; it has not demonstrated that the Court overlooked some controlling precedent or legal principles, or that Court has misapprehended the law or facts such as would have changed the outcome on the bald lack-of-mitigation argument it pressed at trial and in its briefing. Resultingly, API does not satisfy the standard to grant any sort of Rule 59 relief.[35]

**5. API's motion is DENIED regarding the Court's timing and purpose of the process change finding.**

API complains that the Court erred "in finding that API *began* the subject process change after discussions of the purchase by Tyson had already begun . . . ."[36] But that mischaracterizes the key factual finding of the Court. In actuality, the Court found that the SPN stick water removal project became a higher priority

---

[33]  API's Rule 59 Mot. at 6-8.

[34]  *Decision After Trial*, 2025 WL 1826656, at *19.

[35]  *See Strong*, 2013 WL 1228028, at *1 (stating the standard for a motion for reargument).

[36]  API's Rule 59 Mot. at 8 (emphasis added).

because of the looming acquisition.[37]

The Court made no finding as to when the process began because such a finding wasn't necessary. This means that even if API's claim was correct, the factual finding isn't one that "would have changed the outcome of the underlying decision."[38] No matter API's quibble here, the root of the Court's finding remains— API concealed the SPN stick water removal process from Tyson.

### 6. API's motion is DENIED regarding the Court's finding that the *Sipsey* Litigation was not reimbursable.

In API's reargument motion, it suggests that the Court erred in finding that the *Sipsey* litigation was not reimbursable.[39] In doing so, it raises a new argument based specifically on Article 10.2(d) of the APA.[40] Even were the new framing of API's argument proper, it's still unpersuasive.

The Court viewed the *Sipsey* Settlement in light of "the parties' intentions as reflected in the four corners of the agreement."[41] This argument identifying a specific subsection of an Article that the Court already examined, wouldn't change

---

[37] *Decision After Trial*, 2025 WL 1826656, at *4 ("In preparation for the acquisition, API created a 'to-do' list of projects that needed to be completed before due diligence began. Item Number One on that list was removing SPN stickwater from its pet food meal process.").

[38] *See Strong*, 2013 WL 1228028, at *1 (quoting *Kennedy*, 2006 WL 488590, at *1).

[39] API's Rule 59 Mot. at 9-10.

[40] API's Rule 59 Mot. at 9-10.

[41] *Decision After Trial*, 2025 WL 1826656, at *17 n.156 (citing *Terrell v. Kiromic Biopharma, Inc.*, 2025 WL 249073, at *3 (Del. Jan. 21, 2025)).

the Court's findings in its Decision After Trial.

In sum, the Court find now legal error in its original analysis and will not consider API's recasting on the issue.[42]

### 7. API's motion is DENIED regarding the Court's Article 4.21(b) finding.

In API's motion for reargument, it suggests that the Court erred in finding a breach of this provision without finding any corresponding damages.[43] This argument isn't new—it was raised in its post-trial brief when it highlighted "that there have been no claims by Nestle or by anyone else, and no monies paid by Plaintiffs due to a breach of this warranty."[44]

The Court found that API's committed a material breach of the Article 4.21(b) warranty. To succeed on an actionable breach-of-contract, a plaintiff must prove its damages by a preponderance of the evidence.[45] And a successful breach-of- contract claim requires a showing of compensable injury.[46] A plaintiff must prove its damages "with a reasonable degree of precision and cannot recover damages that are

---

[42] *See Strong v. Wells Fargo Bank*, 2013 WL 1228028, at \*1 (Del. Super. Ct. Jan. 3, 2013).

[43] API's Rule 59 Mot. at 11-12.

[44] API's Opening Post-Trial Br. at 23.

[45] *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at \*22 (Del. Ch. Jan. 29, 2010).

[46] *See Kronenberg v. Katz*, 872 A.2d 568, 606 (Del. Ch. 2004) ("[A] breach-of-contract claim under Delaware law requires a showing of compensable injury."); *Dalton v. Ford Motor Co.*, 2002 WL 338081, at \*6 (Del. Super. Ct. Feb. 28, 2002) ("[T]he judicial system is not required to entertain actions where plaintiffs have not suffered any damages.").

merely speculative or conjectural."[47]

True, a specific damages figure could never be distilled as tied to this specific breaching conduct. But no doubt, the risk of action by Nestle transferred to Tyson at the time of the transaction in these circumstances—as well as the diminished value of a company and plant that had such history—was real.[48] This was all resolved by the Court's aggregate breach findings and more conservative damages award.

API has failed to demonstrate that the Court has misapprehended the law or facts such as would have changed the outcome of the underlying ruling on this particular breach claim.

## IV. CONCLUSION

For the foregoing reasons, API's motion is **GRANTED in part,** and **DENIED in part**. The Decision After Trial has been withdrawn and will be reissued with clarifications to include the Court's award of simple interest, instead of compounding interest.

**IT IS SO ORDERED.**

/s/ Paul R. Wallace

_____

Paul R. Wallace, Judge

---

[47] *Kronenberg*, 872 A.2d at 609 (cleaned up).

[48] *Decision After Trial*, 2025 WL 1826656, at *12 ("The fact that Nestle wasn't aware of the non-conformity is immaterial because API was clearly aware of its non-compliance . . . Since the Nestle contract had been and was still active and API's pre-SPN-process-change products were not in compliance therewith—API breached Article 4.21(b).").